IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM A. B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-509-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for a period of disability and disability insurance benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB in December 2016, alleging an onset date of May 15, 2014 (Tr. 157). Plaintiff's claims were denied initially in April 2017 and upon reconsideration in July 2017 (Tr. 89, 95). Plaintiff requested an evidentiary hearing that was held in November 2018 (Tr. 104, 116). ALJ Lisa Leslie denied Plaintiff's application on March 20, 2019 (Tr. 37). The Appeals Council denied Plaintiff's request for review (Tr. 1). Plaintiff filed a timely Complaint in this Court (Doc. 1).

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 13).

**Issues Raised by Plaintiff**

Plaintiff makes the following arguments:

1. The ALJ failed to account for Plaintiff's moderate social deficits in the RFC.

2. The ALJ erred by failing to account for Plaintiff's moderate concentration, persistence, and pace deficits in the RFC.

**Applicable Legal Standards**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step other than step 3 precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, this Court's scope of review is limited. "The findings of the Commissioner

of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. She determined that Plaintiff did not engage in substantial gainful activity from his alleged onset date of May 15, 2014 through December 31, 2018 (his date last insured) (Tr. 28).

The ALJ made the following findings: 1) Plaintiff had severe impairments of anxiety, agoraphobia, and depression through the date last insured; 2) Plaintiff had moderate limitations interacting with others; 3) Plaintiff had moderate limitations in concentration, persistence, and pace; 4) Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" (Tr. 28-30).

The ALJ determined Plaintiff's residual functional capacity as follows:

[P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, routine

tasks but not in a fast-paced environment such as an assembly line. The claimant is limited to work that requires only occasional changes in the work setting, occasional interaction with coworkers, and no interaction with the general public.

(Tr. 31).

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was unable to perform past relevant work through the date last insured yet concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 36).

### The Evidentiary Record

The following summary of the record is tailored to Plaintiff's arguments.

**1. Agency forms**

Plaintiff completed a function report in which he reported that "interactions with other people become impossible, and even being out of a 'safe place' makes me anxious and afraid" (Tr. 188). He further explained that he only leaves his house to go to his parents' house or a medical appointment (Tr. 189). He does not perform any exterior work at home, but he does cleaning, laundry, and repairs inside (Tr. 190). When he is in a work setting or otherwise public setting, he becomes "too stressed out…drawing a blank, fumbling over words, messing up my concentration" (Tr. 193).

Plaintiff also completed a work history report in which he reported his most recent job was that of line cook, from 2012-2014 (Tr. 181). From 1996-2012, he worked as an excavation laborer, mechanic, and computer technician (*Id*.). He also installed flooring (*Id*.).

**2. Evidentiary Hearing-November 27, 2018**

Plaintiff was 37 years old on the date of the hearing (Tr. 50). He testified that he sees a psychiatrist approximately every two months and a counselor every two weeks (Tr. 48). His

appointments are scheduled later in the day so that he can be around less people (*Id*.) Approximately 2-4 times a month, he has a panic attack when he is "out in the open" or around "strangers" or a "large group of people (Tr. 49). He becomes lightheaded and dizzy, and his heart rate incases (*Id*.) If he can remove himself from the stressful situation, his symptoms subside within 30-60 minutes (Tr. 50). He is normally unable to leave his house 2-3 days a week (Tr. 50). On those days, his symptoms are less severe than a panic attack but he is still "very, very nervous", sweating, and nauseous (*Id*.) When he is under stress or has responsibility, he becomes flustered and overwhelmed, to the point where he "shut[s] down and cannot concentrate" (Tr. 52). Leaving his house and/or being around other people causes him stress (*Id*.).

The ALJ asked vocational expert Darrell Taylor to offer opinions on the following hypothetical: an individual of Plaintiff's age, work history, and education who was "limited to performing simple, routine tasks, but not in a fast-paced environment such as an assembly line" and "limited to work that requires only occasional changes in the work setting" and who "could have occasional interaction with coworkers, and no interaction with the public" (Tr. 55-60). Dr. Taylor testified that such an individual could not perform any of Plaintiff's past work. Dr. Taylor further testified that Plaintiff's previous positions were skilled, but there were approximately 300,000 positions nationally for unskilled dishwashers and 400,000 "medium, unskilled cleaner positions" nationally (Tr. 60).

3. **Relevant Medical Records**

Prior to the November 27, 2018 hearing, Plaintiff regularly saw a counselor at Centerstone, a mental health facility (Tr. 259-340, 357-374, 392-487, 490-505, 507, 508). He also saw a psychiatrist, Dr. Habib (*Id*.). Plaintiff started treating at Centerstone in 2015 when he had

"passive thoughts" about suicide, thinking that "life would be easier for everyone else" if he was not living (Tr. 263). He reported that he "always had concerns being around others" but in recent years he started totally withdrawing from social interaction for "weeks at a time" (Tr. 265). He stopped working in May 2014, explaining that social interaction caused severe stress to such an extent that he could not calm himself (*Id.*). Plaintiff described a childhood history of mental abuse, witnessing physical abuse, and an incident where he was physically assaulted by three men (Tr. 261, 469-470). When he started receiving services at Centerstone in 2015, his goal was to overcome his social phobia (Tr. 285).

At Plaintiff's annual assessment in 2017, his counselor noted that Plaintiff continued to demonstrate motivation to cope with his anxiety, depression, anger, and childhood trauma (Tr. 400). He was able to "develop some comfort level in regards to putting himself in more social situations, such as going to Church regularly" (*Id.*). He continued to need counseling services, psychiatric services, and case management (*Id.*). Plaintiff was taking Celexa and Wellbutrin, both psychotropic medications (Tr. 297). His primary diagnoses were social anxiety disorder and major depressive disorder (Tr. 321).

4. **State Agency Consultants' Mental RFC Assessments**

Courtney Zeune, PsyD and Melanie Nichols, PhD, found that Plaintiff was moderately limited in the following areas: 1) ability to carry out detailed instructions; 2) ability to maintain attention and concentration for extended periods; 3) ability to interact appropriately with the general public; 4) ability to accept instructions and responded appropriately to criticisms from supervisors; 5) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 70, 71, 82, 83).

Both Dr. Zeune and Dr. Nichols found that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Both Dr. Zeune and Dr. Nichols further explained that Plaintiff was "able to perform short repetitive tasks in a setting with flexible pace and production requirements" (Tr. 70, 82).

## Analysis

The ALJ must include all of the claimant's limitations supported by the medical record in the RFC assessment and the hypothetical to the vocational expert. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (*quoting Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Here, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace ("CPP") and in social interactions (Tr. 35). The ALJ further found that the conclusions of Drs. Zeune and Nichols regarding Plaintiff's moderate CPP and social interaction limitations were consistent with the medical record and Plaintiff's testimony (Tr. 35).

Recent Seventh Circuit case law makes it clear that the ALJ's hypothetical and RFC assessment did not sufficiently encompass Plaintiff's moderate limitations in CPP and social interactions. In *Varga*, a state agency psychological consultant determined the claimant had the following moderate limitations in her ability: 1) to carry out detailed instructions; 2) to maintain concentration and attention for extended periods; 3) to complete a normal workweek and workday without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; 4) to accept instructions and respond appropriately to criticism from supervisors; 5) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Varga*, 794 F.3d at 814. Here, Drs. Zeune

and Nichols also determined Plaintiff had these same moderate limitations.

In *Varga*, the ALJ used the following language in the hypothetical to the vocational expert and the RFC: whether a person "who was able to perform simple, routine tasks in a work environment….free of fast paced production requirements, involving only simple work related decisions with few if any workplace changes and no more than occasional interaction with coworkers and supervisors." *Id*. at 812. Here, the ALJ used nearly identical language in the hypothetical: "limited to performing simple, routine tasks, but not in a fast-paced environment such as an assembly line" and "limited to work that requires only occasional changes in the work setting" and who "could have occasional interaction with coworkers."

The Seventh Circuit determined the ALJ's language in the *Varga* hypothetical and RFC was inadequate, noting:

> The hypothetical question begins by positing a person capable of performing "simple, routine, and repetitive tasks." These terms refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days. As Varga notes, whether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments-e.g., with difficulties maintaining concentration, persistence, or pace-can perform such work. For this reason, we have repeatedly rejected the notion that a hypothetical like the one here "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."

*Id*. at 814 (internal citations omitted). The additional language "not in a fast-paced environment" and "limited to work that requires only occasional changes in the work setting" does not account for "difficulties maintaining concentration, persistence, and pace which, as the record shows, were related to [the claimant's] anxiety and depression…" *Id*. at 814. Likewise, here, Plaintiff's

Page **8** of **10**

inability to maintain CPP is related to his depression, anxiety, and agoraphobia. Because the Seventh Circuit has consistently held that the language used by the ALJ inadequately encompasses moderate CPP limitations, this case must be remanded. *Id.* (*citing Yurt v. Colvin*, 758 F.3d 850, 855 (7th Cir. 2014)); *Crump*, 932 F.3d at 570.

Of course, no two cases are exactly the same, and there are certain limitations the *Varga* claimant possessed that are not at issue in this case, and *vice versa*. The Court is not persuaded that any distinctions between this case and *Varga* affect the outcome.[3] The "most effective way" to ensure that the hypothetical and the RFC adequately encompass the claimant's limitations is to include all of those limitations directly in the hypothetical and RFC. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018).

One distinction does, however, require further clarification. Here, Plaintiff is moderately limited in his ability to "interact appropriately with the general public," a limitation not discussed in *Varga*. The ALJ included in the hypothetical and RFC that Plaintiff was to have no contact with the general public, a qualifying statement that clearly encompasses Plaintiff's moderate limitation to interact with the general public. All of Plaintiff's other "social interaction" limitations are also considered CPP limitations, none of which were sufficiently encompassed by the ALJ's hypothetical and RFC. *Varga*, 794 F. 3d at 814-15.

## Conclusion

This Order should not be construed as an indication that the Court believes that Plaintiff

---

[3] Nor does Defendant argue that any distinctions between *Varga* and this case affect the outcome. Instead, Defendant points the Court to *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). In *Jozefyk*, the claimant "did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record [did] not support any." 923 F.3d at 498. Thus, there were no "evidence based restrictions" the ALJ could include in the RFC on remand. Here, however, Plaintiff testified regarding his restrictions, and the records from Plaintiff's psychiatrist and counselor corroborate Plaintiff's testimony.

was disabled during the relevant period or that he should be awarded benefits. To the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for a period of disability and disability insurance benefits is **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: September 24, 2021

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**